UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP JOHNSON,<br><br>    Petitioner,<br><br>    v.<br><br>RAFAEL ZUNIGA,<br><br>    Respondent. | No. 1:15-cv-00493-SKO HC<br><br>**ORDER DENYING PETITION<br>FOR WRIT OF HABEAS CORPUS**<br><br><br>**(Doc. 1)** |

    Petitioner, Philip Johnson, is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner contends that the Bureau of Prisons ("BOP") violated his right to Due Process at his disciplinary hearing because BOP's regulation regarding sending mail is unconstitutionally vague.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

I. **Background**

On January 20, 1999, the U.S. District Court for the Middle District of Florida sentenced Petitioner to 300 months' imprisonment after he was convicted of interference with commerce by threat or violence (18 U.S.C. § 1951); kidnapping (18 U.S.C. § 1201); and money laundering (18 U.S.C. § 1956). Petitioner is incarcerated at the Federal Correctional Institution ("FCI"), Mendota, California. His projected release date is January 14, 2020, with good conduct time.

On April 2, 2014, a BOP investigative officer read a letter Petitioner submitted for mailing to Mr. Robert Brewer ("Mr. Brewer"). Mr. Brewer is not in BOP custody. In the letter, Petitioner requested Mr. Brewer instruct his incarcerated son, Jordan Brewer ("Jordan"), to deliver typewriter ribbon to Petitioner. Petitioner was previously incarcerated with Jordan and left typewriter ribbon with Jordan when Petitioner transferred to FCI Mendota. Petitioner suggested that Jordan send the typewriter ribbon with the next inmate to transfer from Jordan's place of incarceration to FCI Mendota. In exchange for the delivery of the typewriter ribbon, Petitioner offered to decrease a debt owed by Jordan to Petitioner.[2] Petitioner suggested to Mr. Brewer that he should not contact Jordan by phone, because communicating the message by phone would be a violation of BOP regulations. Specifically, he wrote:

> Before you start talking to [Jordan] about this on the phone, remember <u>one thing</u>; talking on the phone by a BOP prisoner is kind of a tricky thing! If you don't want Jordan to be falsely charged with an offense, please read these next words <u>carefully</u>. In the BOP, EVERYTHING IS PROHIBITED! It's against the rules – everything! Here, some of the inmates are put in the SHU[3] for the offense of "3-way calling." The word is that if I say over the phone, "Can you tell Joey . . . (whatever)," they charge them with 3-way calling! Many of the inmates who are charged with a phone-related offense DO NOT KNOW that what they're charged with is illegal! I'm telling you! I don't want to scare you off from helping me. But it would be best not to talk about this over the phone.

(Doc. 14-1 at 25) (emphasis in original).

---

[2] The record does not give any further information about Jordan's debt to Petitioner.
[3] SHU refers to the Special Housing Unit.

2

In his Incident Report dated April 2, 2014, Petitioner was charged with circumventing mail monitoring procedures, BOP Code 296. BOP Code 296 prohibits:

> [u]se of mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act,[4] special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; [5] and using a fictitious return address in an attempt to send or receive unauthorized correspondence.

28 C.F.R. § 541.3, Table 1, Code 296.

Special Investigative Support ("SIS") Technician S. Rositas described the incident as follows:

> [o]n April 2, 2014, at approximately 10:20 a.m., while monitoring mail in R&D[,][6] I screened a letter[ ] sent by [Petitioner], Reg. No. 77304-079. The letter was intended for Mr. Robert Brewer at . . ., Utah . . . . In the letter [Petitioner] is requesting Mr. Brewer contact his son Jordan Brewer, Reg. No. . . ., currently incarcerated at FCI Victorville. The relationship was verified through inmate Brewer's PSI. Specifically, [Petitioner] stated he needed Mr. Brewer to deliver a message to his son regarding the delivery of personal property. The message gave specific instructions on how to locate an inmate designated to FCI Mendota by call out sheets. Once an inmate was located he was to pack multiple used cassette ribbons in his property. Furthermore, [Petitioner] tells Mr. Brewer not to communicate his letter over the phone because such actions would be considered "3-way calling."[7]

(Doc. 14-1 at 19.)

When contacted by Lieutenant A. Smith, who was investigating the incident, Petition stated "I have been down sixteen years and I never heard of this" (circumventing the mail

---

[4] BOP regulations include a list of prohibited acts that are divided into four categories based on severity: greatest; high; moderate; and low. 28 U.S.C. § 541.3(a).
[5] BOP regulations prohibit communication between inmates from different facilities without authorization. 28 C.F.R. § 540.17.
[6] R&D refers to receiving and discharge.
[7] Three-way calling occurs when an inmate places a call to a person on his approved recipient list and then asks that person to place a call to a third person who is not on the approved list. *Cook v. FCI Fort Dix*, No. Civ. 04-5713 (RBK), 2005 WL 3465666, at * 8, n. 2 (D.N.J. Dec. 16, 2005) (unpublished).

procedures). *Id*. at 20. After the investigation, the Unit Disciplinary Committee ("UDC")[8] referred the matter to the Disciplinary Hearing Officer ("DHO"), recommending the loss of good credit time and "appropriate privileges."[9] *Id*.

DHO J. Dern conducted a disciplinary hearing on April 10, 2014. *Id*. at 22, 24. Petitioner requested the assistance of a staff representative, and Unit Manager S. Scott was appointed. *Id*. at 22. S. Scott reviewed all of the paperwork related to the incident and found that Petitioner was given advance notice and written notice of the charge, so his Due Process rights were not violated. *Id*. At the hearing, Petitioner stated: "I'm not saying I did it or didn't do it, the charge is unconstitutionally unspecific. I did attempt to have an inmate from another institution bring me my typewriter ribbons for money, show me specifically where I can't do that." *Id*.

The DHO considered the following documentary evidence: the incident report and investigation, staff statements, the letter sent by Petitioner, and Petitioner's statements. *Id*. at 23. Petitioner did not request witnesses or to present evidence at the hearing. *Id*.

The DHO concluded that Petitioner committed the code violation of which he was accused. The DHO made the following findings and conclusions:

> The [Petitioner's] due process rights were read and reviewed by the DHO to [Petitioner]. The DHO confirmed [Petitioner] received a copy of his incident report. [Petitioner] requested Unit Manager S. Scott as a Staff Representative and no witnesses. The staff representative reviewed the DHO Packet, found no discrepancies and determined [Petitioner] was not denied Due Process. [Petitioner] understood his due process rights, and was ready to proceed with the DHO Hearing.
>
> The DHO relies upon the reporting staff's statement which S. Rositas, SIS Technician, states in pertinent part: On April 2, 2014 at approximately 10:20 a.m., SIS Tech. S. Rositas observed a letter sent by [Petitioner], 77304-079. The letter instructed the intended recipient to contact his incarcerated son and have somebody being transferred to FCI Mendota place typewriter ribbons in their property. [Petitioner] also instructed the recipient not to discuss this over the

---
[8] The UDC reviews incident reports once a staff investigation is complete and makes a decision as to the next step in the disciplinary procedure. 28 C.F.R. § 541.7.
[9] "Appropriate privileges" appears to include the loss of telephone and email privileges.

4

phone as it was considered three way calling.

The DHO considered [Petitioner's] statement of: "I'm not saying I did it or didn't do it, the charge is unconstitutionally unspecific. I did attempt to have an inmate from another institution bring me my typewriter ribbons for money, show me specifically where I can't do that."

The DHO considered [Petitioner's] decision not to make a statement to the UDC.

The DHO considered [Petitioner's] statement to the investigating Lieutenant, "I've been down sixteen years and I've never heard of circumventing the mail procedures."

The DHO considered [Petitioner's] past disciplinary record with several High/Moderate and Moderate severity offenses showing a pattern of defiance and disregard of institutional rules.

Based upon the greater weight of evidence provided by the reporting Staff and the statement of [Petitioner], the DHO has found that the code of 296, Unauthorized use of Mail (Circumventing), is supported by the evidence, and the greater weight of evidence suggest[s] [Petitioner] committed the prohibited acts of code[ ] 296. Therefore the charges are upheld.

*Id*. at 23-24.

As punishment for violating Code 296, the DHO sanctioned Petitioner with 3 months' loss of telephone and email privileges, and disallowed 27 days of good conduct time. *Id*. at 24.

On March 31, 2015, Petitioner filed the petition for writ of habeas corpus in this Court. The parties do not dispute venue, personal service, subject matter jurisdiction, or exhaustion of remedies.

**II.    BOP Regulation Code 296 Is Not Unconstitutionally Vague.**

Petitioner argues that he was denied his Due Process rights because Code 296 is unconstitutionally vague, in that it did not warn him that his actions in writing the letter were prohibited. (Doc. 1 at 3.) Respondent contends that Code 296 is clear and placed Petitioner on notice that asking an individual to relay a message to a third party was prohibited. (Doc. 14 at 6.)

A. **Standard of Review**

"It is a basic principle of due process that a law is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A regulation must be "sufficiently clear so as to allow persons of 'ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (1998) (quoting *Grayned*, 408 U.S. at 108). Vague regulations are void for several reasons "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Id*. (quoting *Grayned*, 408 U.S. at 108-09).

With prison regulations, "due process undoubtedly requires certain minimal standards of specificity;" however, "the degree of specificity required of such regulations is not as strict in every instance as that required of ordinary criminal sanctions." *Velasquez v. Brown*, No. 1:10-cv-01593-AWI-MJS, 2011 WL 2960875, at *5 (E.D. Cal. July 20, 2011) (unpublished) (quoting *Meyers v. Aldredge*, 492 F.2d 296, 310 (3d Cir. 1974)) (internal quotation marks omitted). In the context of prisons, "the law requires less in the way of notice, and places a greater burden on the individual to make inquiry or ask permission before acting." *Id*. (quoting *Meyers*, 492 F.2d at 311) (internal quotation marks omitted). Courts defer to a "prison authorities' interpretation of prison rules 'unless fair notice was clearly lacking.'" *Id*. (quoting *Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir. 1974)).

B. **BOP Code 296 Provided Petitioner Fair Notice of Prohibited Actions.**

The BOP regulation pertaining to mail listed examples of violations of activities which circumvent mail monitoring procedures. These actions include:

> writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence.

28 C.F.R. § 541.3, Table 1, Code 296.

This regulation puts a reasonable prisoner on reasonable notice that sending a letter to someone with a direction to have the letter sent to an unauthorized third individual was a violation of BOP regulations. Similarly, a reasonable prisoner could conclude from this regulation that directing an individual to communicate with a third individual falls within the scope of the regulation. *Foti*, 146 F.3d at 638 (quoting *Grayned*, 408 U.S. at 108). That the regulation may not describe every potential violation does not render it impermissibly vague. *See Velasquez*, 2011 WL 2960875, at *5. The examples specified in the regulation allow a reasonable prisoner to infer that other similar conduct could also be a violation of Code 296. *Id.*

Here, Petitioner had fair notice that his conduct could constitute a rules violation. Code 296 prohibits the use of mail for abuses other than criminal activity. 28 C.F.R. § 543.1, Table 1, Code 296. Petitioner wrote to Mr. Brewer with the intent to have Mr. Brewer relay instructions to his incarcerated son, Jordan, and even urged Mr. Brewer not to contact Jordan by telephone. Jordan is also incarcerated at a different institution and Petitioner was prohibited from communicating with him without approval. *See* 28 C.F.R. § 540.17. Code 296 clearly prohibits mailing a letter to one individual with the intent of it being sent to a third person. *Foti*, 146 F.3d at 638 (quoting *Grayned*, 408 U.S. at 108). Therefore, Petitioner was given fair notice that writing a letter to Mr. Brewer, asking him to give instructions to his son Jordan, could violate Code 296. As such, Code 296 satisfies the due process requirement of fair notice in the prison context, and the Court will deny Petitioner's petition for writ of habeas corpus. *Velasquez*, 2011 WL 2960875, *5.

### III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability.

**IV.     Conclusion and Order**

The Court hereby ORDERS that:

1. The petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:     **December 19, 2017**                         /s/ *Sheila K. Oberto*
                                                                      UNITED STATES MAGISTRATE JUDGE